**EDEN TOYS, INC., Plaintiff-Appellant,**

v.

**MARSHALL FIELD & COMPANY,
Defendant-Appellee.**

**No. 176, Docket 81–7358.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 19, 1981.

Decided March 31, 1982.

Samuel J. Stoll, New York City (Stoll & Stoll, P.C., New York City, on the brief), for plaintiff-appellant.

Thomas J. Schwarz, New York City (Skadden, Arps, Slate, Meagher & Flom, New York City, on the brief), for defendant-appellee.

Before LUMBARD, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from a summary judgment of the United States District Court for the Southern District of New York, Gagliardi, J., dismissing Eden Toys' copyright infringement action. We affirm.

## I

Eden Toys, Inc. is a nationally known manufacturer of stuffed, plush toys. In 1971, Eden designed and began to manufacture a stuffed toy snowman. This snowman (Snowman I) was two feet tall, had a diamond shaped body, rosy cheeks, a large hat and tattersall scarf. Eden copyrighted Snowman I in 1973. In 1978, Eden revised its snowman design, creating a smaller version with significant changes. The new design (Snowman II) was squarish in appearance with a floppy hat, green scarf and plush, bright red buttons. Snowman I's rosy cheeks and distinctive smile were replaced by a plain white face and a thin, tightly drawn mouth. Eden copyrighted Snowman II in 1979.

Snowman II proved to be a popular item, and Eden sold a number of the toys to retail department stores during the 1978 Christmas season. One of these stores was appellee Marshall Field & Company. In January, 1979, Eden offered to supply Marshall Field with Snowman II for the 1979 Christmas season. Marshall Field responded to Eden's offer in October, 1979, stating that it no longer would purchase Snowman II. Shortly thereafter, several of Eden's employees went to one of Marshall Field's stores and discovered that it was selling a stuffed toy snowman manufactured by another company.

On November 30, 1979, Eden brought the instant action, alleging that Marshall Field's snowman infringed Eden's copyrights on Snowman I and Snowman II. Eden moved for a preliminary injunction and followed with a motion for summary judgment. Marshall Field then cross-moved for summary judgment. Gerald Wit, one of Marshall Field's buyers, filed several affidavits in connection with these motions. Wit averred that while on a routine purchasing trip to the Orient in March, 1979, he had been shown a stuffed toy snowman manufactured by Ryuo Kwang Moolsan, a Korean producer of plush toys. Wit had expressed an interest in this snowman and requested that Ryuo Kwang Moolsan change the material used for the scarf and the centering of the snowman's hat. The Korean manufacturer agreed to make the changes, and Marshall Field placed a sizeable order. Wit denied that the changes were intended to increase the resemblance between the Korean snowman and Eden's products.

In an opinion dated April 16, 1981, Judge Gagliardi granted Marshall Field's cross-motion for summary judgment. Although he upheld the validity of Eden's copyrights, he ruled that Marshall Field had not infringed these copyrights because Eden's snowmen and the Korean snowman were not substantially similar. Judge Gagliardi found that Snowman I and the Korean snowman bore no resemblance to one another and that whatever similarity existed between Snowman II and the Korean product was exclusively the result of features common to all snowmen. Accordingly, he dismissed Eden's complaint. This appeal concerns only that portion of the judgment dismissing Eden's Snowman II claim.

## II

To establish a claim for copyright infringement, a plaintiff " 'must show ownership of a valid copyright and copying by the defendant.' " *Warner Brothers v. American Broadcasting Companies*, 654 F.2d 204, 207 (2d Cir. 1981) (quoting *Novelty Textile*

*Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir. 1977)). Marshall Field does not contest the validity of Eden's copyright on this appeal.

■ Copying may be established circumstantially by showing that the defendant had access to the copyrighted work and that the two works are substantially similar. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp., supra*, 558 F.2d at 1092, *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946). Because Marshall Field has conceded access, the only issue before this Court is whether Judge Gagliardi erred in finding a lack of substantial similarity. The snowmen in question now being in our custody, we have the benefit of our own observations on this issue.

■ The protection afforded a copyrighted work covers only the work's particular expression of an idea, not the idea itself, *Mazer v. Stein*, 347 U.S. 201, 217–18, 74 S.Ct. 460, 470–471, 98 L.Ed. 630 (1954); *A. A. Hoehling v. Universal City Studios*, 618 F.2d 972, 978 (2d Cir. 1980); 17 U.S.C. § 102(b). Thus, "[t]he threshold question is what characteristics of appellant's design have gained copyright protection." *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64, 65 (2d Cir. 1974). Although the process of separating the unprotected idea from the protected expression can sometimes be arduous, *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976), the instant case does not present any difficulties in this regard. For countless generations, children and the young at heart have built snowmen by rolling moist snow into balls and placing them one atop the other. Dark colored objects such as lumps of coal are then used to simulate facial features and buttons. Bearing in mind the traditional characteristics of all snowmen, we find no error in Judge Gagliardi's conclusion that any similarity between Snowman II and the Korean snowman would appear to the ordinary observer to result solely from the fact that both are snowmen.[1] *See Novelty Textile Mills, Inc. v. Joan Fabrics Corp., supra*, 558 F.2d at 1093; *Ideal Toy Corp. v. Fab-lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966).

■ While the two snowmen are roughly the same size, their "total concept and feel" are substantially different. *See Warner Brothers v. American Broadcasting Companies, supra*, 654 F.2d at 211. The head and body of plaintiff's snowman are shaped substantially in block form, with the stitching ribs at the four perpendicular edges of each block. The head and body of defendant's snowman are in the traditional rounded shape of snowballs, with stitching on each side and the back. Because of this difference in shapes, plaintiff's snowman has a flat face, while the face of defendant's is rounded.

Both snowmen have black button eyes approximately ½″ in diameter. However, the eyes on plaintiff's toy are about 1½″ apart, while the eyes on defendant's are about 1″ apart. Plaintiff's snowman has a small black button nose about ⅛″ in diameter. Defendant's has a nose approximately ½″ in diameter. Both snowmen have V-shaped mouths. However, the total length of the lips on plaintiff's is 1″. The total length of defendant's is 1¾″. The space between the outer ends of the lips on plaintiff's snowman is about ⅞″. The same space on defendant's is between 1½″ and 1⅞″.

Each snowman has two red buttons. However, plaintiff's are approximately 1¾″ to 2″ in diameter and are made of a soft clipped yarn. Defendant's are approximately 1″ in diameter and have a texture more like felt. The top edge of the upper button on plaintiff's toy is about ½″ below the green scarf that encircles its neck. The top edge of the upper button on defendant's is about 1½″ below the black and white

---

1. The district court did not err in granting summary judgment without first receiving evidence on the characteristics common to all snowmen. The traditional features of a snowman are known generally and thus appropriate for judicial notice. *See Doran v. Sunset House Distributing Corp.*, 197 F.Supp. 940, 944 (S.D.Cal. 1961), *aff'd sub nom. Sunset House Distributing Corp. v. Doran*, 304 F.2d 251 (9th Cir. 1962); F.R.E. 201(b)(1).

scarf that it wears. There is a 1¼″ space between buttons on plaintiff's snowman and a 1¾″ to 2″ space on defendant's.

Snowman II has a floppy black hat set back off its forehead and a kelly green scarf with white fringes. Defendant's toy has a shaped black hat with a red band that is shading its eyes and a black and white striped scarf with red fringes. The two snowmen are made of noticeably different material, that of plaintiff's being softer and fluffier.

These numerous differences furnished ample support for the district court's finding that the two snowmen are not substantially similar. *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980).

 Marshall Field's failure to produce evidence that the Korean snowman was Ryuo Kwang Moolsan's completely independent creation did not mandate a contrary finding. Evidence of independent creation may be introduced by a defendant to rebut a plaintiff's prima facie case of infringement. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp., supra*, 558 F.2d at 1092 n.2; *Fisher-Price Toys v. My-Toy Co.*, 385 F.Supp. 218, 221 (S.D.N.Y.1974). The absence of such evidence is not determinative of liability, however, when two works are not so substantially similar as to raise the inference of copying. Even if an alleged copy is based on a copyrighted work, " 'a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's.' " *Warner Brothers v. American Broadcasting Companies, supra*, 654 F.2d at 210 (quoting 3 *Nimmer on Copyright* § 13.03[B], at 13–37 (rev. ed. 1980)).

The judgment of the district court is affirmed.

LUMBARD, Circuit Judge, dissenting:

I dissent.

The snowmen were placed before the court, my brethren looked for differences and of course found them. But in doing so, they violate this circuit's rule that products are substantially similar if "the ordinary observer, unless he set out to detect the disparities would be disposed to overlook them, and regard their aesthetic appeal as the same. That is enough; and indeed it is all that can be said, unless protection against infringement is to be denied because of variants irrelevant to the purpose for which the design is intended." *Peter Pan Fabrics, Inc. v. Martin Weiner*, 274 F.2d 487, 489 (2d Cir. 1960) (L. Hand). The key to the ordinary observer test is similarities, not differences. *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980) quoting *Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090, 1093 n.4 (2d Cir. 1977). Considering the "primary elements" of the snowmen, *Malden Mills, Inc. v. Regency Mills, Inc.*, 626 F.2d 1112, 1114 (2d Cir. 1980), I think these are similar toys and I think toy buyers will find them similar too.

The toy buyers will not have the two side by side for comparison as we did. Nor will they carry rulers to detect that the snowmen's nose widths, lip lengths, eye spaces and button diameters differ by fractions of an inch. Nor will they pause for serious investigation of the different stitching or contours. No; the average observer's glance will light on one with the same favor as on the other. They share similar composition (two snowballs, two buttons, scarf, face and hat), they share similar facial expressions, and, in general, they share the same "aesthetic appeal."

It is true that plaintiff cannot copyright the "idea" of a snowman. But Eden Toys created something special in its current snowman. The majority notes that Snowman II, replacing Snowman I, won a considerable following. Eden Toys' design and artwork earned the public's favor. It is that design and that artwork that the copyright laws are intended to protect. It is that design and artwork—with its attendant commercial success—that Marshall Field has taken. In sanctioning this misappropriation, the majority leaves open to future copyists the chance to seize the essence

of a work while escaping liability through minor changes. Until today, this circuit frowned on such a practice. *See Concord Fabrics, Inc. v. Marcus Bros. Textile Corp.,* 409 F.2d 1315, 1316 (2d Cir. 1969) (per curiam).

I would reverse the judgment of the district court and remand for further proceedings.