**Dennis W. ECKES and James Beckett III, Plaintiffs,**

v.

**SUFFOLK COLLECTABLES & C.P.U., Defendants.**

No. 80 Civ. 1549.

United States District Court, E.D. New York.

Sept. 25, 1983.

Michael I. Kroll, Syosset, N.Y., for plaintiffs.

Salvatore A. Alamia, Babylon, N.Y., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GLASSER, District Judge:

This case having been tried to the Court, the following represent my findings of fact and conclusions of law.

### FACTS

The facts in this case emerged as largely undisputed. The plaintiffs wrote and had published a book entitled the "Sport Americana Baseball Card Price Guide." The first publication of the book was in approximately February of 1979. This publication was copyrighted and registered under number TX 232–812. A second edition of the plaintiffs' book was issued in approximately March of 1980. This edition bore registration number TX 490–212.

The plaintiffs' work represents a comprehensive listing of certain collectable baseball cards along with their value. The plaintiffs' work is conceded by defendants to be the first in-depth listing of its kind.

Defendant C.P.U., a partnership comprising Mark Lewis and Warren Karp, wrote and had published a monthly publication entitled, "Card Prices Update." The first publication of defendants' work was in approximately September of 1979. The defendants' work is a monthly price update which sets forth the latest prices in the marketplace for selected collectable baseball cards and the price trends for such cards. The price trend is indicated by a plus for an upward trend or a minus for a downward trend.

Plaintiffs allege that the defendants' publication infringes on their copyright.

### Discussion

■ The test for copyright infringement is two-pronged. Plaintiffs "must show ownership of a valid copyright and copying by the defendant." *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir.1977). *Accord, Eden Toys Inc. v. Marshall Field & Co.*, 675 F.2d 498, 499 (2d Cir.1982).

■ As to the first prong, ownership of a valid copyright, the introduction into evi-

dence of a timely obtained Copyright Office certificate of registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980). The introduction of the certificate of registration, however, creates only a rebuttable presumption of copyright validity. *See id.* "Where other evidence in the record casts doubt on the question, validity will not be assumed." *Id.*

The plaintiffs here have introduced into evidence timely certificates of registration for the two editions of their work; they are, therefore, entitled to a rebuttable presumption of copyright validity. The defendants sought at trial to overcome this presumption by arguing that the plaintiffs' copyright was invalid because there were material omissions on the plaintiffs' application form submitted to the Copyright Office. The defendants argued that the plaintiffs' application had failed to inform the Copyright Office that the "Sport Americana Baseball Card Price Guide" was a derivative work based on the plaintiffs' own prior uncopyrighted publication entitled, "Sport Americana Bicentennial Edition 1976."

■ I find this argument unpersuasive. The plaintiffs' 1979 copyrighted publication represents a substantial change from their 1976 publication. The 1976 publication contained only a listing of certain baseball card sets. The 1979 edition contains a much more comprehensive listing of sets, as well as three different prices for each card, depending upon the card's condition. Further, the 1979 edition contains a different cover, more pictures, and sections on the history of card collection, condition guides, and how to obtain cards.

These substantial changes render the 1979 edition an original work capable of copyright protection. *See* Copyright Act § 103(a), 17 U.S.C. § 103(a); *B & B Auto Supply, Inc. v. Plesser*, 205 F.Supp. 36 (S.D.N.Y.1962); *Flick-Reedy Corp. v. Hydro-Line Manufacturing Co.*, 351 F.2d 546

(7th Cir.1965). Therefore, any omission on the plaintiffs' application was insignificant. *See Russ Berrie & Co. Inc. v. Jerry Elsner Co. Inc.*, 482 F.Supp. 980, 988 (S.D.N.Y. 1980) ("the knowing failure to advise the Copyright Office of facts *which might have occasioned a rejection of the application* constitute reason for holding registration invalid and thus incapable of supporting an infringement action" (emphasis added)); *Advisors, Inc. v. Wiesen-Hart, Inc.*, 238 F.2d 706, 708 (6th Cir.1956) ("innocent misstatement ... in the affidavit and certificate of registration, unaccompanied by fraud ... does not invalidate the copyright").

Having determined that the plaintiffs possess valid copyrights in their works, the remaining question is whether the defendants are guilty of copying.

■ Copying may be established circumstantially by demonstrating that the defendants had access to the protected work and that the two works are substantially similar. *Eden Toys, Inc. v. Marshall Field & Co., supra*, 675 F.2d at 500. In this case the defendants conceded at trial that they had access to the plaintiffs' work before they issued their publication. The relevant inquiry is therefore whether the works are "substantially similar."

■■ It is by now axiomatic that the protection afforded a copyrighted work covers only the work's particular expression of an idea, not the idea itself. 17 U.S.C. § 102(b); *Mazer v. Stein*, 347 U.S. 201, 217–18, 74 S.Ct. 460, 470–71, 98 L.Ed. 630 (1954); *Eden Toys, Inc. v. Marshall Field & Co., supra*, 675 F.2d at 500. This distinction serves to reconcile the competing interests underlying the copyright laws: rewarding an individual's ingenuity and effort while at the same time permitting society to benefit from further improvement or progress resulting from others' use of the same subject matter. *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976). It is for this reason that the sub-

stantial similarity necessary to prevail in a copyright action must relate to the work's copyrightable matter, that is, to its expression rather than its idea. *See id.*

 Thus, facts and data alone do not achieve protection, *see Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 979 (2d Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980), except against wholesale appropriation of the form of the expression. *See Wainright Securities, Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91, 96 (2d Cir.) *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978); *Suid v. Newsweek Magazine,* 503 F.Supp. 146 (D.D.C.1980). It is a further corollary of the idea/expression dichotomy that where expression and idea are indistinguishable, the copyright will protect only against identical copying. *Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 616 (7th Cir.) *cert. denied,* — U.S. ——, 103 S.Ct. 176, 74 L.Ed.2d 145 (1983). Thus, "similarity of expression ... which necessarily results from the fact that the common idea is only capable of expression in more or less stereotyped form will preclude a finding of actionable similarity." *Id.* at 617 (quoting 3 Nimmer on Copyright § 13.03 [A][1], at 13–28).

Plaintiffs here claim that the defendants copied their work in two major respects: copying of format and copying of some 18,000 prices. After thoroughly reviewing the publications involved, and considering the testimony and evidence introduced at trial, I find that the plaintiffs have failed to establish a copyright violation.

 Turning to the claim relating to format first, there is no question but that the publications bear certain similarities. Both publications contain vertical lists of baseball cards, including the name of the player, the number of the card, and the value of the card. Both group the cards according to date and series. Both include the dimensions of the card, the total number of cards in the series, and the price for the complete set of the series. Both feature a picture of one of the cards in each series listed.

In contrast to these similarities are certain marked differences. Defendants' publication is printed in a newspaper format and is approximately 8″ × 11″. Plaintiffs' publication is a soft-covered book approximately 8½″ × 5½″. Plaintiffs' work contains a list of every card in a particular series, while defendants' work contains only certain cards having higher than average value. Plaintiffs' work contains three prices for each card, depending on the card's condition, while defendants' publication lists only one price for each card. Defendants' publication also contains a plus or a minus sign indicating the price trend of each card listed.

Weighing all of these similarities and differences, I find that the format of the defendants' work does not represent a "wholesale appropriation" of the form of the plaintiffs' expression. *See Wainright Securities, Inc. v. Wall St. Transcript Corp., supra.* I reach this conclusion because I find that the similarities of the two publications are largely a function of the idea being expressed.

The salient feature of similarity between the two publications is that they each contain a chronologically and numerically arranged vertical listing of baseball cards with prices alongside. I find that this similarity is unavoidable, as this format is the most logical and clear way of expressing the idea to be conveyed. Because I find the similarities in the format of the two publications inherent in the nature of the information being communicated, I do not find any copyright infringement based on format. *See Atari, Inc. v. North American Phillips Consumer Electronics Corp., supra,* 672 F.2d at 616; *Durham Industries, Inc. v. Tomy Corp., supra,* 630 F.2d at 913; *Triangle Publications, Inc. v. Sports Eye, Inc.,* 415 F.Supp. 682 (E.D.Pa. 1976); *see generally* Denicola, *Copyright in Collection of Facts: A Theory for the Protection of Nonfiction Literary Works,* 1981 Columbia L.Rev. 516, 527–35.

■ I turn next to the plaintiffs' claim that the defendants copied the prices from the plaintiffs' publication. I note at the outset that although the prices themselves might arguably be characterized as unprotected facts, *see Hoehling v. Universal Studios, supra,* a compilation of prices such as the plaintiffs' clearly would be entitled to protection against wholesale appropriation. *See Wainright Securities, Inc. v. Wall Street Transcript Corp., supra,* 558 F.2d at 96. Further, compilation works such as the plaintiffs' have historically been afforded protection against not only wholesale appropriation, but against any attempt to capitalize on the fruits of the compiler's efforts.

For example, in *Jeweler's Circular Publishing Co. v. Keystone Publishing Co.,* 281 F. 83 (2d Cir.1922), the plaintiff had copyrighted and published a directory entitled, "Trade-Marks of the Jewelry and Kindred Trades." The defendant published a similar publication entitled, "The Jewelers Index." After finding compilation works copyrightable, the Second Circuit held that it was an infringement for the defendant to utilize portions of the plaintiff's directory to "save himself 'the expense and labor of working out and arriving at those results by some independent road.'" *Id.* at 95. The Second Circuit noted further: "The law of copyright only requires the subsequent compiler to do for himself that which the first compiler has done. The same sources of original information are open to each .... But if the defendant has used [the plaintiff's compilation] to save himself the trouble of making an independent selection or classification ..., although he may have done so only to a very limited extent, he has infringed the [plaintiff's] copyright." Id. at 92 (quoting *List Publishing Co. v. Keller,* 30 Fed. 772 (S.D.N.Y.1887)). Other cases have reached a similar result. *See, e.g., Schroeder v. William Morrow & Co.,* 566 F.2d 3 (7th Cir.1977) (plant nursery directory); *Adventures in Good Eating v. Best Places to Eat,* 131 F.2d 809 (7th Cir. 1942) (restaurant directory); *Leon v. Pacific Telephone & Telegraph Co.,* 91 F.2d 484 (9th Cir.1937) (telephone directory); *North-*

*western Bell Telephone Co. v. Bedco of Minnesota, Inc.,* 501 F.Supp. 299 (D.Minn. 1980) (telephone directory); *National Research Bureau, Inc. v. Kucker,* 481 F.Supp. 612 (S.D.N.Y.1979) (directory of shopping centers); *Southwestern Bell Telephone Co. v. Nationwide Independent Directory Service, Inc.,* 371 F.Supp. 900 (W.D.Ark.1974) (telephone directory). *See generally Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1370 (5th Cir.1981) (directory cases "in a category by themselves"); R. Denicola, *Copyright in Collection of Facts: A Theory for Protection of Nonfiction Literary Works,* 1981 Columbia L.Rev. 516, 527–35.

■ Based upon these cases, I conclude that if the plaintiffs had demonstrated at trial that the defendants had relied upon the plaintiffs' prices in publishing their own price guide, an infringement would have been established. After carefully reviewing the prices set forth in the plaintiffs' 1979 edition and the first edition of the defendants' guide, however, I find that the prices are not sufficiently similar to support this inference. For this reason, I find no infringement as to prices.

The plaintiffs concede that the prices contained in the defendants' price guide are considerably higher than those contained in the plaintiffs' work. Plaintiffs argue, however, that the defendants merely added "a few pennies or a fixed percentage to [the plaintiffs'] base price." *Plaintiffs' Post Trial Memorandum* at p. 14. After carefully comparing the prices contained in the two publications, I find no constant percentage of increase, and thus must conclude that the defendants utilized some independent means for arriving at the prices reported.

The plaintiffs also claim that independent of the precise price listed for each card, the defendants have copied the plaintiffs' selection as to which cards sell for a significantly higher than average premium, so called "star" cards. I found the testimony of both plaintiffs entirely credible as to the degree of care taken and the skill and

expertise required in the determination of such cards. Further, I found the defendants' testimony evasive as to how they determined which cards to place a premium value on. I find, however, that there is insufficient evidence upon which to conclude, as argued by the plaintiffs, that the defendants "slavishly" copied the plaintiffs' choice of "star" cards.

Although a comparison of the two publications as to the cards for which a premium price is reported reveals marked similarity, it is impossible to determine whether this is a result of direct copying, or whether it is instead a natural consequence of the fact that both publications attempt to report the actual market prices for the cards involved. It also must be recognized that since the plaintiffs' work is regarded as the authority in the field, it is entirely possible that the prices in their publication not only reflect market prices, but in fact can determine market prices. Thus, any subsequent publication accurately reflecting which cards are being traded at a premium would, of necessity, bear strong similarities to the plaintiffs' work. In sum, although I find the defendants' choice of "star" cards sufficiently similar to the plaintiffs' so as to warrant a suspicion of copying, I find that the price variations between the two publications render the defendants' work not so substantially similar as to justify a finding of copyright infringement.[1]

The road to that finding was an extremely difficult one. The signposts along the way were not compelling in any direction. One such sign temptingly beckoned in the direction of the plaintiffs to discourage these defendants and those who might come after them from using the plaintiffs' work to save themselves the "expense and labor of arriving at those results by some independent road." Another sign pointed in the direction of the defendant to permit society to benefit from further improvement that results from use by another of the same subject matter. It may seem preposterous to speak of social benefit being derived from baseball cards. But being just a flip off the block of the Great American Pastime who is to say that there isn't any?

For the foregoing reasons, I find that the plaintiffs have failed to establish copyright infringement, and the Clerk is therefore directed to enter judgment in defendants' favor.

SO ORDERED.

---

**1.** The plaintiffs have also claimed that the defendants copied pictures contained in the plaintiffs' publication. Although the plaintiffs do not hold copyrights in these pictures, such copying could result in copyright infringement. *See Jeweler's Circular Publishing Co. v. Keystone Publishing Co., supra.* Nonetheless, after comparing the pictures contained in both publications, I find the similarity insufficient to warrant a finding of infringement.

As a final matter, it should be noted that plaintiffs also rely on certain common typographical errors in the names of the cards to support an inference of copying. While it is true that common errors support an inference of copying, I find these errors insignificant here, since plaintiffs have made no infringement claim as to the names of the cards in each series. *See Plaintiffs' Post Trial Memorandum* at p. 17 ("[Plaintiffs] claim no originality in the names and numbers of each specific player").