**MATTHEW BENDER & CO., INC., Plaintiff,**

v.

**KLUWER LAW BOOK PUBLISHERS, INC., Defendant.**

**No. 86 Civ. 1381 (WCC).**

United States District Court, S.D. New York.

Oct. 22, 1987.

Hale, Grant, Meyerson, O'Brien & McCormick, New York City, for plaintiff; Harold I. Meyerson, Kevin J. McGraw, of counsel.

Pryor, Cashman, Sherman & Flynn, New York City, for defendant Kluwer Law Book Publishers, Inc.; Andrew H. Bart, Jamie M. Brickell, of counsel.

OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiff Matthew Bender & Co., Inc. ("Bender") commenced this action against defendant Kluwer Law Book Publishers, Inc. ("Kluwer") and various individuals associated with or employed at Kluwer. The complaint initially set forth two causes of action. First, Bender alleged copyright infringement of a portion of one of its treatises on personal injury litigation. Second, Bender alleged wrongful use of proprietary information obtained at Bender by the various individual defendants. By Stipulation and Order in November, 1986, all claims relating to proprietary information and all claims against the individual defendants were dismissed with prejudice. Accordingly, the action currently involves only the claim of copyright infringement against Kluwer.

The parties have stipulated that there are no material factual issues in dispute, and have cross-moved for summary judgment.

### Background

In 1982, Bender published a nine-volume set entitled *Damages in Tort Actions* ("Damages"). Volume 6 of the set, first published on November 24, 1982, contains a chapter entitled "Illustrative Awards and Settlements" ("Chapter 59"). This chapter, which consisted of 635 pages in the original publication, presents information relating to personal injury and wrongful death awards and settlements, compiled in a chart form.

In November, 1985, Kluwer published a single volume work consisting of 730 pages entitled *What's It Worth? A Guide to Current Personal Injury Awards and Settlements* ("What's It Worth"). This volume also presents in chart form information relating to personal injury and wrongful death awards and settlements. Both What's It Worth and Chapter 59 have been supplemented since their initial publications.

### Comparison of the Two Works

There are numerous similarities between the formats of Chapter 59 and What's It Worth. Both Chapter 59 and the Kluwer volume organize their selected cases into separate sub-chapters according to the part of the body injured. To that end, Chapter 59 has 30 sub-chapters and What's It Worth has 28 chapters. The body-part categories are arranged alphabetically in both works. Notwithstanding minor differences in the name of a body-part category (*e.g.* Bender's "Pelvis" compared with Kluwer's "Pelvic Injuries"), or differences in the number of subdivisions (*e.g.* Bender's separate "Foot" and "Lower Leg" categories contrasted with Kluwer's single category of "Foot and Lower Leg Injuries"), the two systems of categorization are virtually identical. Both publications contain a wrongful death category as well.

Each of Bender's chapters, which corresponds to an area of the body, is divided into four sub-chapters according to the nature of the plaintiff's recovery: whether the recovery was the result of a "settlement", or a judgment which was considered an "adequate", "inadequate" or "excessive" award. Kluwer's chapters utilize the identical four subdivisions in the same sequence. Both works further subdivide according to state of jurisdiction (alphabetically), and by amount within each state (largest amount to smallest amount).

Both the Bender Chapter 59 and the Kluwer What's It Worth volume utilize a chart having six columns separated by vertical lines and extending across two facing pages. In each column, the segments relating to different cases are separated by horizontal lines. Both charts have four columns on the left-hand page and the remaining two on the right-hand page. The actual column headings are as follows:

| Damages, Chapter 59 | What's It Worth |
| --- | --- |
| Amount | Amount |
| Case | Case/Citation/Attorneys |
| Plaintiff | Injured Party |
| Event | Occurrence |
| Injury | Specific Injury |
| Relevant Data | Pertinent Information |

As indicated in its second column heading, the Kluwer volume reports the name

of the attorneys where such information is available. The Bender volume does not. Where available, the county in which the case was settled or decided is reported in the Kluwer volume in the "Amount" column. The Bender chapter generally does not report such information and, when it does, the information appears in the "Case" column.

Finally, plaintiff has conceded that there was no copying of the actual case descriptions contained in the Bender work by the Kluwer treatise. The cases compiled by Kluwer were, for the most part, different from those compiled by Bender.

*Discussion*

On a motion for summary judgment, a determination of non-infringement as a matter of law may be made only if the similarity between the works involves only non-copyrightable elements of the plaintiff's work. *Hoehling v. Universal Studios, Inc.*, 618 F.2d 972 (2d Cir.), *cert. denied*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). "It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the expression of an idea and never to the idea itself." *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir.1976). The distinction between an idea and the expression of that idea, however, has often proved nebulous and troubling. *See, e.g., Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir.1930); *See also* 3 Nimmer on Copyright § 13.03(a) (1986); *Digital Communications Associates Inc. v. Softlklone Distributing Corporation*, 659 F.Supp. 449, 2 U.S.P.Q.2d 1385, 1390 (N.S.Ga.1987) ("The inherent problem with applying the idea (and expression merged with idea) versus expression (copyrightable) distinction to any specific case is defining the underlying 'idea' of the copyrighted work.") As Judge Learned Hand stated in *Peter Pan Fabrics, Inc. v. Martin Wiener Corp.*, 274 F.2d 487 (2d Cir.1960), "[n]o principle can be stated as to whether an imitator has gone beyond the 'idea,' and has borrowed its 'expression.' Decisions must therefore inevitably be *ad hoc.*" *Id.* at 489.

Two related doctrines of copyright law bear heavily on the court's determination in the present case: (1) the doctrine of merger, which concerns the idea-expression dichotomy; and (2) the "blank form" doctrine which finds its roots in the landmark Supreme Court case *Baker v. Selden*, 101 U.S. (11 Otto) 99, 25 L.Ed. 841 (1879).

■ Clearly, the idea of compiling in chart form representative settlement and award data of personal injury cases is not copyrightable. *See Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954) (copyright protection covers only the expression of an idea and not the idea itself); 17 U.S.C. § 102(b) (1976). The question remains, however, whether Bender's use of a particular chart with chapter and subchapter headings exceeds the boundaries of "idea" and enters the realm of "expression," thereby rendering these elements protectible under federal copyright law.

This inquiry requires consideration of the doctrine of merger, which was recently articulated by the Third Circuit in *Educational Testing Services v. Katzman*, 793 F.2d 533 (3d Cir.1986):

The merger principle ... is a variation of the idea/expression dichotomy ... when the idea and the expression of the idea coincide, then the expression will not be protected in order to prevent creation of a monopoly on the underlying "art." ... [A]n expression will be found to be merged into the idea when "there are no or few other ways of expressing a particular idea." *Id.* at 539 *quoting Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1253 (3d Cir.1983).

In *Educational Testing*, the Third Circuit found the limits of the merger principle unnecessary to define because the Court was "unpersuaded that the number of questions that can be devised to test students on their knowledge of square roots or dangling participles is so limited that [plaintiff's] questions designed for this purpose represent[ed] a merger with the underlying ideas." *Id.* at 540.

Similarly, in *Toro Co. v. R & R Products Co.*, 787 F.2d 1208 (8th Cir.1986), in which the copyrightability of a numbering system

for replacement parts was at issue, the Eighth Circuit articulated a broad definition of the merger doctrine:

> Under the copyright law doctrine of merger, a close cousin to the idea/expression dichotomy, copyright protection will be denied to even some *expressions* of ideas if the idea behind the expression is such that it can be expressed only in a very limited number of ways. The doctrine is designed to prevent an author from monopolizing an idea merely by copyrighting a few expressions of it.

*Id.* at 1212 (emphasis in original). The Eighth Circuit rejected the applicability of the doctrine in *Toro* because it did not believe "that the idea of a parts numbering system is susceptible of only a very limited number of expressions." *Id.*

In this case, the "idea" embodied in Bender's work is to provide attorneys working on a medical malpractice case with a useful guide, in chart form, outlining the results achieved in prior similar cases. The expression of this "idea," it seems, can be achieved in a variety of ways by organizing the charts differently. Still, though, there are a limited number of categories in which this information can be grouped. Indeed, the information can be divided into 9 categories:

1. Case/citation
2. Plaintiff/Injured Party
3. Attorneys
4. Location of the trial
5. Part of body injured
6. Description of Injury
7. Occurrence/Event
8. Other Pertinent Information (medical expenses, lost earnings, etc.)
9. Amount of award or settlement

While in theory there are numerous ways to place this information in chart form, from a practical point of view the number of ways to organize this information in a useful and accessible manner is limited. It would make little sense, for example, to arrange the information by listing all of the cases alphabetically or chronologically, or by organizing the cases according to the names of the attorneys listed alphabetically. These arrangements, while possible, would be of little value to a practitioner seeking relevant information.

Further, the method employed by Bender in compiling the information does not, in itself, convey any information. In *Norton Printing Co. v. Augustana Hospital*, 155 U.S.P.Q. 133 (N.D.Ill.1967), the district court was asked to determine the protectibility of forms which comprised a system for recording medical laboratory tests. The court noted that:

> The determination of whether 'forms' are copyrightable is generally said to depend upon whether they are merely 'works designed for recording information' or whether they 'in themselves convey information.' See § 202.1(c), Regulations of the Copyright Office. All business, medical, legal, or other forms are thus not per se excluded from copyright protection, but the determination turns on whether they actually convey information or whether they are merely to be used to record it. In the former situation, a copyright may be validly obtained, but not in the latter situation. Id. at 134.

The Court in that case determined that since the forms were quite detailed and contained many categories and areas for examination, these medical forms "can also serve to convey information as to the type of tests to be conducted and the information which is deemed important." *Id.* It therefore denied defendant's motion to dismiss the claims for copyright infringement.

The same cannot be said of the forms employed by Bender which convey no information whatsoever, but rather are vehicles for recording information. Indeed, Kluwer has used forms very similar to those of Bender in order to record information on cases different from those in Bender's work. Further, unlike *Norton Printing, supra,* there can be no claim by Bender that the charts used by Bender "also serve[d] to convey information as to the type of tests to be conducted and the information which is deemed important." The various components of the Bender chart are not original creations of the editors at

Bender. For example, there are numerous other publications and treatises discussing personal injury cases which were in existence prior to Bender's work which divide cases according to the parts of the body involved. This method of sorting cases can be found in American Law Reports ("ALR"), which were not created by Bender and were in existence prior to Bender's Damages and other personal injury treatises. Further, American Jurisprudence ("AmJur") and Corpus Juris Secundum ("CJS") similarly categorized personal injury cases. Bender itself had used this method of dividing cases prior to Damages in *Personal Injury Actions, Defenses, Damages* and in *Courtroom Medicine Series.*

Further, Bender cannot claim a legally protectible interest in the specific column headings utilized in its chart. Terms such as "amount" and "jurisdiction" are merely taken from the normal usage of the courts in describing key aspects of individual cases. The terms employed are the most logical and clear way of expressing the idea to be conveyed. Indeed, these terms, or synonyms for them, are the only way of conveying the desired information.

■ In *Eckes v. Suffolk Collectables v. C.P.U.,* 575 F.Supp. 459 (E.D.N.Y.1983) *rev'd sub. nom., Eckes v. Card Prices Update,* 736 F.2d 859 (2d Cir.1984), the district court was called upon to determine whether plaintiff's volume, which was comprised of a comprehensive list of baseball cards, their respective values and other pertinent information, was subject to copyright protection and, if so, whether it was infringed by defendant's subsequent publication. The District Court stated that, as to the common format:

> The salient feature of similarity between the two publications is that they each contain a chronologically and numerically arranged vertical listing of baseball cards with prices alongside. I find that this similarity is unavoidable, as this format is the most logical and clear way of expressing the idea to be conveyed. Because I find the similarities in the format of the two publications inherent in the nature of the information being commu-

nicated, I do not find any copyright infringement based on format. *Id.* at 462.

In reversing the finding of no copyright infringement, the Second Circuit Court of Appeals focused upon the question of selection, creativity and judgment in choosing 5000 "premium" cards from its list of the 18,000 or so baseball cards then in existence and found that the number of common cards in the two works evidenced copying. Thus, in *Eckes*, it was the act of selecting the same 5000 or so cards which constituted infringement.

In *Dow Jones & Co. Inc. v. Board of Trade of City of Chicago*, 546 F.Supp. 113 (S.D.N.Y.1982), plaintiff sought a preliminary injunction restraining defendant from disseminating copies of Dow's stock market indexes. The court pointed out that a compilation of factual materials is protected for two separate reasons: first, because of the labor expended in their preparation; and second, "because the author exercised subjective judgment and selectivity in choosing items to list." *Id.* at 115. It then found Dow's lists to be copyrightable "[d]ue to the effort and judgment exercised in their composition, and the non-functional purposes to which they are put." *Id.* at 116.

In *Financial Information, Inc. v. Moody's Investors Service, Inc.*, 751 F.2d 501 (2d Cir.1984), the court stated the relevant questions to be answered on remand in determining whether the daily information on bond calls prepared by plaintiff can be considered a protectible compilation:

> whether the data used on the FII cards involved a modicum of selection, coordination, or arrangement on FII's part, sufficient to meet the rather broad copyrightability standard of originality which is phrased in terms of "independent creation" rather than the narrower, inapplicable standards of "uniqueness" or "novelty" or "ingenuity" ... [and] what other facts about the called bonds that could be included or might conceivably have some use to a potential purchaser of the service have been omitted, to determine the degree of 'selectivity' involved. And the court should consider whether any

selection, *coordination,* or arrangement is involved in terms of the called bond issues which are reported on. (citations omitted) (emphasis in original) *Id.* at 507.

On remand, the district court in *Financial Information, Inc. v. Moody's Investors Service, Inc.,* 231 U.S.P.Q. 803 (S.D.N.Y.1986) found that FII researchers and editors do not perform tasks comparable to the "selection, creativity and judgment in choosing among the 18,000 or so differing baseball cards in order to determine which were the 5,000 premium cards" found to exist in *Eckes, supra.* Specifically, the district court stated:

> While I do not discount the arduous effort involved in obtaining and supplying the daily called bond card data to subscribers (as my previous holding indicates), the modicum of selectivity, coordination or arrangement required by the Court of Appeals to qualify for copyright protection is simply not present. There is no coordination or arrangement of the data except to codify it into a uniform mold.

The court therefore found that the daily called bond service did not meet requisite copyright requirements.

Here, too, the "modicum of selectivity, coordination or arrangement required by the Court of Appeals to qualify for copyright protection is simply not present." *Id.* It cannot be said that the editors at Bender "exercised judgment and selectivity in choosing items" to include in the chart. *Dow Jones, supra,* 546 F.Supp. at 115. The categories which Bender employed in its charts are the only sensible ones which could have been used to compile the data contained in Damages. The use of nearly identical charts to compile data on future cases would not constitute a copyright infringement since the chart's components by themselves are not copyrightable in this case.

Indeed, an examination of these charts reveals that they could also be used to compile data on claims for disability benefits by persons involved in an accident at work, or insurance claims by those injured in automobile accidents. Given the broad and general nature of these charts, and their potential use in a wide variety of settings, it is clear that Bender cannot own a copyright on them.

*Conclusion*

For the reasons outlined above, the charts contained in Bender's Damages are, in themselves, not copyrightable. Accordingly, the claims brought by Bender against Kluwer for allegedly infringing on Bender's copyright are dismissed.

So Ordered.