George L. KREGOS, d.b.a. American Sports Wire, Plaintiff,

v.

The ASSOCIATED PRESS and Sports Features Syndicate, Inc., Defendants.

No. 89 Civ. 2007 (GLG).

United States District Court, S.D. New York.

Feb. 12, 1990.

---

Mark P. Stone, Stamford, Conn., for plaintiff; Mark P. Stone, of counsel.

Anderson Kill Olick & Oshinsky, P.C., New York City, for defendant The Associated Press; Nicholas L. Coch and Walter G. Marple, Jr., of counsel.

Norman E. Lehrer, Cherry Hill, N.J., for defendant Sports Features Syndicate, Inc.; Norman E. Lehrer, of counsel.

GOETTEL, District Judge.

For many sports fans, simply watching or listening to a ball game is sufficient to quench their enthusiasm. The true devotee demands more, however, and poring over daily, weekly, and yearly "stat sheets" becomes an obsession. Each year, it seems, commentators and analysts devise more numerous criteria for measuring the performance of one player against another and one generation against another. This trend is readily apparent in the baseball world, where the simple box score of yesteryear has been supplemented by statistics measuring game winning runs batted in, batting averages with men in scoring position, and relief pitchers' success rates in save situations.[1] The case presented before this court involves a dispute over these beloved statistics. Specifically, this action involves copyright and trademark disputes over "pitching forms," which calculate and categorize various statistics for the starting pitchers scheduled to appear in upcoming baseball games. These forms are then utilized by members of the general public, including, of course, gamblers and bookmakers.

I. FACTS

In 1983, plaintiff, George L. Kregos, created a "pitching form" to be published in various newspapers throughout the country. The form listed various statistics in a tabular format with a legend at the bottom to explain the categories. Developing such a form was not unique to plaintiff as other individuals, including plaintiff himself in 1979, previously had created similar forms. Each of these preexisting forms listed various statistics for the pitchers scheduled to appear upcoming games. Differences existed, however, among the forms and, in fact, plaintiff received two copyrights for his 1983 form.[2]

The 1983 Kregos form, see Appendix 1, which is still published today, contains the following statistics. The first four columns list the teams, the scheduled starting pitchers, the game time, and the odds on the game, respectively. These four categories are contained in virtually every form that has been created, including defendant's, and are not specifically at issue in this case. The remaining nine columns on plaintiff's form represent the primary grounds of contention. Within these nine columns are three general categories that are each further divided. The first major category lists each pitcher's statistics for the current season. Under this heading are the sub-categories of wins, losses, and earned run average. The second general category represents the pitcher's performance during his career against the scheduled opponent. Plaintiff further tailors this category to only include the pitcher's statistics against this opponent at the particular site where the upcoming game is to be played. This category is then divided into wins, losses, innings pitched, and earned run average. Finally, the last of the main categories lists various statistics for the pitcher's last three starts. Included

---

1. Some of these new categories are rather obscure. For example, a recent issue of *Sports Illustrated* magazine tabulated categories such as total pitches seen by a batter, total pickoff throws, and total pitches thrown. *Sports Illustrated*, Oct. 9, 1989, at 109 (statistics compiled by Stats, Inc.).

2. The history behind plaintiff's receipt of these copyrights is rather detailed and not particularly relevant to resolving the instant motions. Suffice it to say that plaintiff received copyright TXU–205–877 on June 25, 1985 for the computer software that generated the form and copyright TX–2–372–190 on December 29, 1986 for the physical form itself, in conjunction with the legend appearing at the bottom of the form.

within this category are wins, losses, innings pitched, earned run average, and men on base average ("MBA").[3]

In 1984, the Associated Press ("AP") began to publish its own pitching form. *See* Appendix 2. The statistics for its form were compiled by defendant Sports Features Syndicate, Inc. pursuant to a contractual agreement. AP's 1984 form was identical in virtually every sense to plaintiff's form. One distinction was that AP's form renamed certain categories and sub-categories. For example, the MBA was called average hits and walks per game ("AHWG"), and while plaintiff's form generally refers to odds, AP listed these same odds under a column called "line." Despite these cosmetic distinctions, the categories in both forms analyzed and tabulated the same statistics. One other distinction between the two forms was that plaintiff's form offered a slightly more detailed analysis in its legend.[4]

Plaintiff contacted AP upon learning of this competing form but his complaint fell on deaf ears as AP suggested plaintiff had no copyrightable interest in his form. In 1986, however, AP amended its form to the one it uses today.[5] *See* Appendices 3 & 4.[6] This new form is of the same basic format

as its earlier form with some modifications. The new form retains the teams, pitchers, time, and line categories, although the line is occasionally listed below the time, rather than as a separate column. The new form also includes the same three general categories as the old form and plaintiff's form. In the first category, the current season's statistics, AP includes wins, losses, earned run average, and a new sub-category, team record. This new column represents the team's record in games started by the particular pitcher during the specific season.[7] The second major category, the record against the scheduled opponent, still includes wins, losses, innings pitched, and earned run average. However, AP made two changes to this category. First, while AP's old form and plaintiff's current form calculate these statistics against the upcoming opponent at the site of the scheduled game, AP's new form includes any results against that opponent, regardless of where the games were played. Moreover, AP's new form only lists this statistic for the current season, rather than for the pitcher's entire career as its previous form did and plaintiff's form continues to do. With respect to the last major category, the last three starts, AP's new form still includes wins, losses, innings pitched, earned

---

**3.** In all pitching forms, wins and losses are listed in one column entitled "W–L," rather than two separate ones.

It appears that plaintiff was the first person to list this last category, men on base average, in a pitching form. There is evidence, however, that an Associated Press supplier had calculated the statistic in a different context prior to plaintiff's publication of his form. Plaintiff contends that he never saw this statistic before and that he was its creator. We need not resolve this dispute and only point out that the statistic represents the average number of men to reach base via hits and walks per nine innings. Earned run average, we note, represents the average number of earned runs (*i.e.*, those attributable to the pitcher and not his teammates' errors) per nine innings. The other categories need no further explanation.

**4.** AP suggested both at oral argument and in a supplemental brief that plaintiff's form and this 1984 AP form were not identical. Technically, we suppose, this contention is correct but we are troubled by such a representation. For all intents and purposes the forms are identical since the categories represent the same statistics

and the legends, while slightly more detailed in plaintiff's form, discuss the exact same categories.

**5.** We are unaware of the reasons behind AP's decision to change its form.

**6.** We have annexed two substantially similar versions of AP's current form because while AP claims that Appendix 3 is the form it sends to the newspapers, Appendix 4 was actually published in *The Hartford Courant*. The differences between the two are extremely minor, relating only to the legend and the names of certain columns. AP contends that editors at *The Hartford Courant* independently and erroneously made these changes. These distinctions are irrelevant to our resolution of the pending motions and are only noted for the sake of completeness.

**7.** A pitcher does not receive a win or a loss on his individual record in every game he pitches in. Thus, this new category usually accounts for more games than the pitcher's individual won-lost record.

run average, and AHWG.[8]

In March 1989, plaintiff instituted this action for both copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (1988), and trademark infringement for false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1988). Plaintiff claims that both the old and new forms produced by AP violate his property rights. Plaintiff seeks declaratory, injunctive, and monetary relief, as well as costs and attorney's fees.

AP now moves for summary judgment and plaintiff cross-moves for such relief.[9] AP contends that plaintiff lacks any cognizable rights in his form under the copyright laws since the form is not original. Moreover, it suggests that under the idea/expression merger doctrine, the form is not copyrightable. Finally, it claims that the form is actually a "blank form" for recording facts and is explicitly precluded from copyright protection. Alternatively, AP contends that even if plaintiff's form is copyrightable, it has not infringed any of plaintiff's rights since its new form is not substantially similar to plaintiff's. With respect to trademark infringement, AP contends that a finding of non-copyrightability similarly requires a finding of non-protectibility under the trademark laws. Plaintiff counters these arguments by claiming he is entitled to summary judgment or, alternatively, that existing questions of fact prevent the grant of summary judgment to AP.[10]

## II. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to demonstrate the absence of a material, factual dispute. Fed.R.Civ.P. 56(e). If that burden is met, the non-moving party cannot simply contend that its complaint sets forth a valid cause of action. *Id.* It "must set forth specific facts showing that there is a genuine need for trial," *id.*, and there must be more than "some metaphysical doubt as to [those] material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). In determining whether that burden is met, however, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). Against this backdrop of summary judgment jurisprudence, we turn to the instant motions.

### A. Copyright Claims

The Copyright Act of 1976 affords a right to sue to the holder of a registered copyright. 17 U.S.C. § 501(b) (1988). The plaintiff must show he possesses a valid copyright that has been infringed by the defendant. *Weissmann v. Freeman*, 868 F.2d 1313, 1320 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989). Infringement generally can be shown by proffering evidence of both access to the copyrighted work and a substantial similarity between the protected work and the infringing work. *Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 402 (2d Cir. 1989). Nonetheless, even if infringement could be proven, the fact that a plaintiff

---

**8.** The new form occasionally also renames certain categories, notwithstanding their reference to the identical statistics as the earlier form. For example, while the old form listed probable *pitchers,* the new one often lists the column only as pitchers. Again, such cosmetic distinctions do not represent appreciable differences between the forms.

**9.** Defendant Sports Features Syndicate, Inc. is not involved in either of the pending motions.

**10.** AP also contends that the Copyright Act's statute of limitations limits plaintiff's recoverable damages to the three years immediately preceding the complaint's filing. Consequently, it suggests, even if we find the forms to be copyrightable, any attempt to determine "substantial similarity" must be limited to a comparison of plaintiff's and AP's current forms since AP's original form has not been published in over three years. As will become clear from the remainder of our ruling, we do not find any need to address this question.

may have a registered copyright does not mandate a conclusion that the copyright is valid. The issuance of a certificate of registration merely creates "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c) (1988). A rebuttable presumption of validity is created, which shifts to the defendant the burden of disproving the copyright's validity. *Weissmann,* 868 F.2d at 1320–21; *Past Pluto Prods. Corp. v. Dana,* 627 F.Supp. 1435, 1440 (S.D.N.Y. 1986). In the context of a motion for summary judgment, the courts have held that while the issues of access and substantial similarity are generally questions of fact, summary judgment can be granted to a defendant when the substantial similarities are of non-copyrightable elements. *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 48 (2d Cir.), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986); *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2d Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). Thus, in the case at bar, the fact that plaintiff's form is copyrighted only creates a rebuttable presumption of validity. If AP can prove the form is actually not copyrightable, notwithstanding any similarities between the forms, summary judgment is as appropriate as in any other context.

### 1. Originality

The copyright statute protects "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a) (1988). Recognizing this, the courts have unequivocally held that facts cannot be copyrighted. *See Financial Information, Inc. v. Moody's Investors Serv.,* 808 F.2d 204, 207 (2d Cir.1986), *cert. denied,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987); *Hoehling,* 618 F.2d at 979. A contrary view would unreasonably limit the public's right to use information existing in the public domain. *Id.* Plaintiff claims he is not attempting to copyright facts, but rather, is attempting to

copyright a form that is a compilation of these facts. A compilation, which is defined as "the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged," 17 U.S.C. § 101 (1988), is copyrightable provided "the resulting work as a whole constitutes an original work of authorship." *Id.* Protection is, therefore, available for a compilation if it involves "a modicum of selection, coordination, or arrangement," such that it becomes an "independent creation." *Financial Information, Inc. v. Moody's Investors Serv.,* 751 F.2d 501, 507 (2d Cir.1984).[11] This standard is interpreted broadly and while more than a trivial variation is required, *Weissmann,* 868 F.2d at 1321 (quoting *Alfred Bell & Co. v. Catalda Fine Arts,* 191 F.2d 99, 102–03 (2d Cir.1951)), uniqueness, novelty, or ingenuity are not. *Financial Information,* 751 F.2d at 507. AP contends that plaintiff's form does not satisfy these minimal standards. It argues that plaintiff's organization of the statistics is not sufficiently different from forms existing prior to the 1983 creation of plaintiff's form. Moreover, it contends that practical restrictions on the size of the forms prevent plaintiff from actually exercising any real selectivity. Plaintiff, of course, disputes these contentions.

Evidence has been presented suggesting that prior to plaintiff's creation of his 1983 form, three other individuals, plus Kregos himself, had published pitching forms. In attempting to show his form to be original, plaintiff goes through a detailed analysis of the distinctions between his form and the other three. He attempts to suggest that his work is original since no other form includes all the statistics he uses in the exact same order. Moreover, he claims there has been no showing that any preexisting form included the men on base average.

In *Financial Information, Inc. v. Moody's Investors Service,* 808 F.2d 204 (2d Cir.1986), *cert. denied,* 484 U.S. 820,

---

**11.** In adopting this test, the Second Circuit has rejected the "sweat of the brow" test, which awards copyright protection based merely on

the effort one expends. *Financial Information,* 808 F.2d at 207.

108 S.Ct. 79, 98 L.Ed.2d 42 (1987), plaintiff published Daily Bond Cards that listed five statistics on certain municipal bonds that were being redeemed. These cards were sold to plaintiff's subscribers. Defendant then began producing its own set of cards, which included significantly more data than plaintiff's cards. Initially, the court restated its general reluctance to grant copyrights to non-fictional works. *Id.* 808 F.2d at 207 (citing *Eckes v. Card Prices Update,* 736 F.2d 859, 862 (2d Cir.1984)). Thereafter, the court affirmed the district court's determination and concluded that plaintiff's cards did not exhibit the requisite selection or coordination to copyright a compilation. All plaintiff's employees did was cull various statistics from the tombstone ads that were published in conjunction with the bond redemptions and this was insufficient to satisfy the requirement of "independent creation." *Id.* 808 F.2d at 207–08.

In the case at bar, the same analysis can be applied. Every statistic used by plaintiff is readily available to a person willing to read the box scores of the preceding day's games. Moreover, virtually every nuance supposedly created by plaintiff existed in prior forms. For example, one of the preceding forms, the Eckstein form, contained the same three general categories used by plaintiff. Moreover, with respect to sub-divisions of these general categories, even though Eckstein's form does not include wins, losses, and earned run average in his current season category, a form previously published by Fratas does. Similarly, in the versus opponent category, Fratas' form again includes the same categories as does plaintiff's, including the "at site" limitation, the only difference being that Fratas' form limits this category to the specific season, rather than the pitcher's entire career. Finally, in the last three starts category, Eckstein's form includes three of the four columns used by plaintiff, the exception being plaintiff's inclusion of the men on base average. We recognize

that none of these forms is precisely the same as plaintiff's. However, the key issue is whether the form in its entirety can be considered sufficiently original in light of the selection or coordination of the plaintiff. Although this determination of originality is a question of fact, *Financial Information,* 808 F.2d at 207, we find that the evidence offered by AP, and not adequately rebutted by plaintiff, as to plaintiff's lack of selection or coordination permits us to grant summary judgment in favor of AP. *Cf. Durham Indus. v. Tomy Corp.,* 630 F.2d 905, 918 (2d Cir.1980) (although "substantial similarity" is generally factual question, court can determine it as a matter of law on summary judgment motion). Were we to find otherwise, any mere reordering of the facts contained in a pitching form would give rise to copyrightable interests.[12]

In relying on *Financial Information, Inc. v. Moody's Investors Service,* we expressly distinguish the Second Circuit's ruling in *Eckes v. Card Prices Update,* 736 F.2d 859 (2d Cir.1984). In *Eckes,* the court held that plaintiff's selection of 5,000 baseball cards from a total of 18,000 to be included on its "premium" card list was a sufficient exercise of selection, creativity, and judgment. *Id.* at 863 (citing with approval *Roy Export Co. v. Columbia Broadcasting Sys.,* 672 F.2d 1095, 1103 (2d Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *Dow Jones & Co. v. Board of Trade,* 546 F.Supp. 113, 115 (S.D.N.Y.1982)). In the case at bar, however, plaintiff did not exercise such creativity as most of the statistics, as well as the coordination of these statistics, had been established in previously existing forms. Moreover, as will be further discussed in the next section of this opinion, the newspapers that publish the forms strictly limit the number and organization of the statistics to be included, thereby further curtailing the possibility of originality based on selection or arrangement.

**12.** We also note that while the parties have not discussed this issue, the first four columns of virtually every pitching form include the same categories (*teams, pitchers, game time,* and *odds*). Since plaintiff is seeking protection of his entire form, not individual categories, it is relevant to the issues of selection and coordination that these categories are generally included, and in the same order no less, on most pitching forms.

## 2. Idea/Expression Merger

A related limitation of the copyright laws is that ideas cannot be copyrighted. Rather, it is only the expression of these ideas that is protectible. *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir.1982); *see* 17 U.S.C. § 102(b) (1988); 37 C.F.R. § 202.1(b) (1989). In this context, the so-called idea/expression merger doctrine has developed. The doctrine, admittedly an extremely vexatious one to apply, provides that if the number of ways of expressing a particular idea are limited, the idea and expression are deemed to merge and neither one is copyrightable. *See Matthew Bender & Co. v. Kluwer Law Book Publishers*, 672 F.Supp. 107, 109 (S.D.N.Y. 1987) (quoting *Educational Testing Servs. v. Katzman*, 793 F.2d 533, 539 (3d Cir. 1986)).

Plaintiff's idea in this case is to publish an outcome predictive pitching form. The form itself represents the expression of this idea. Plaintiff suggests that there are infinite means of expressing this idea due to the variety of statistics actually available and the sundry possibilities for organizing these statistics. For example, plaintiff represents that statistics such as balks, wild pitches, and total pitches thrown can all be included in a pitching form. Moreover, while plaintiff selected the past three starts as his third general category, he argues that another statistician could just as easily choose the four or five preceding starts. Therefore, plaintiff contends the merger doctrine is inapplicable to the facts presented in this case.

While it may be theoretically possible to include numerous statistics in a form and to organize them in multiple fashions, in reality there are an extremely limited number of ways of practically expressing such statistics. This limitation stems predominantly from the severe space restrictions imposed by the newspapers that publish these forms. Generally, only seventy-eight characters, including spaces, are allotted. Plaintiff's Memo. at 20. In fact, plaintiff testified that "if you give them something too big, they won't publish it. They want something concise and to the point." Kregos Depo. at 57. Thus, even though there are an infinite number of theoretical statistics that can be included, the newspapers prevent analysts from going too far afield. This restriction, in turn, requires analysts to be sure to include only the most pertinent statistics within their forms.

The suppliers of these forms are apparently quite cognizant of these restrictions since before plaintiff published his 1983 form, the Siegel, Fratas, and Eckstein forms included wins, losses, innings pitched, and earned run average on their forms, but, with one exception, never any of the theoretically possible statistics like balks or pitches thrown.[13] Moreover, none of the forms created subsequent to 1983 ever included these theoretical categories, nor has any form ever included anything other than the last three starts in the final general category. With respect to the actual order of presenting the statistics, once again we note that the customary fashion is to list wins, losses, innings pitched, and earned run average. Notwithstanding the obvious mathematical possibilities for reordering such statistics, the public and the newspapers apparently have come to expect this standard order and most of the forms that include these four statistics list them in this very order. In fact, plaintiff testified that this "is the normal way of putting [these statistics] in." Kregos Depo. at 92. Granted, all the existing forms are not identical and distinctions can be drawn. For the most part, however, these trivial variations show that there are an extremely limited number of practical means of publishing an outcome predictive pitching form. Therefore, the idea/expression merger doctrine is applicable.

We are influenced by the analysis of Judge Conner in *Matthew Bender & Co. v. Kluwer Law Book Publishers*, 672 F.Supp. 107 (S.D.N.Y.1987). In that case, plaintiff published a nine-volume set of books, which included a chapter on personal injury damage awards. This chapter tabulated various personal injury awards according to the injured body part, listing such crite-

---

**13.** The only exception is that Siegel's form included a column for hits given up by a pitcher.

ria as the amount of the award, the plaintiff, and the type of injury. Defendant thereafter published its own guide to personal injury awards and included some statistics, like the attorneys' names, that were not noted in plaintiff's table. Moreover, the cases tabulated in defendant's guide were often different than those plaintiff reviewed. The court found the charts not copyrightable under the idea/expression merger doctrine. First, it held that notwithstanding the potentially unlimited quantity of factors that could be listed in such a chart, practical limitations severely curtailed these possibilities. Additionally, the court recognized that there were not endless permutations available for arranging these categories since "from a practical point of view the number of ways to organize this information in a useful and accessible manner [was] limited." *Id.* at 110. The court proceeded to analyze the originality issue, holding that because of these practical limitations on publishing a personal injury chart, plaintiff also failed to establish the modicum of selection or arrangement needed to validly copyright a compilation. *Id.* at 111–12. We find this analysis equally pertinent to our earlier determination that plaintiff's compilation was not original. Since an extremely limited number of ways to practically publish a pitching form exist, plaintiff's form does not exhibit the requisite selection or arrangement to receive protection.

In reaching this conclusion, we distinguish the facts presented before Judge Kocoras of the Northern District of Illinois in *Wabash Publishing Co. v. Flanagan*, No. 89–C–1923, 1989 WL 32939 (N.D.Ill. Apr. 3, 1989). In *Wabash Publishing*, plaintiff sought copyright protection for a racetrack guide that listed numerous statistics relating to the past performances of racehorses. As in the case at bar, plaintiff's form was often used as an aid to gamblers. Although it later ruled in favor of the defendant, the court found the form copyrightable, relying on the fact that "an abundance of data exists regarding horse races and

there are many ways to select and arrange such data." *Id.; see also Triangle Publications, Inc. v. Sports Eye, Inc.,* 415 F.Supp. 682, 684 (E.D.Pa.1976) (dictum) (horse racing form validly copyrighted) (citing *Triangle Publications v. New England Newspaper Publishing Co.,* 46 F.Supp. 198, 201–02 (D.Mass.1942)). Notwithstanding the similarities between outcome predictive forms for horse racing and baseball, the facts in *Wabash Publishing* are distinguishable due to the absence of true selection or arrangement by plaintiff in the case at bar.

### 3. Blank Form

■ A third limitation on the availability of copyright protection is the so-called "blank form" doctrine. This doctrine, having its roots in *Baker v. Selden,* 101 U.S. (11 Otto) 99, 25 L.Ed. 841 (1879), prevents the copyrighting of a "blank form" that is merely used to record information. *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 971 (11th Cir.1983).[14] The regulations promulgated pursuant to the Copyright Act codify this doctrine, prohibiting copyright protection for:

> Blank forms, such as time cards, graph paper, account books, diaries, bank checks, scorecards, address books, report forms, order forms and the like, which are designed for recording information and do not in themselves convey information.

37 C.F.R. § 202.1(c) (1989). AP argues that plaintiff's form is merely a "blank form," conveying no information, while plaintiff contends that the form shows his actual determination of the pertinent factors to be considered in handicapping a baseball game.

Once again we agree with the defendant. While we recognize that plaintiff's form is not a true "blank form" for recording information since people generally do not purchase it with the intent of filling it in themselves, the form is sufficiently analogous in that it fails to convey information. As noted, the categories selected by plaintiff do not show the necessary arrange-

---

**14.** The doctrine has been criticized in 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.18[C], at 2–200 (1989).

ment or selection to be considered original compilations. Moreover, the limited number of ways of publishing such a form, due to the newspapers' restrictions, prevent plaintiff from claiming that his analysis of the relevant statistics actually is being presented to the public. *See Matthew Bender*, 672 F.Supp. at 110–11. Therefore, we also find plaintiff's form not copyrightable based on this doctrine.

We conclude, therefore, that under any of the three tests we have discussed, plaintiff lacks a copyrightable interest in his pitching form and summary judgment can be granted in favor of AP.[15] Thus, we need not consider the issues of access and substantial similarity.

### B. *Trademark Claims*

■ Plaintiff has also brought a claim under section 43(a) of the Lanham Act,[16] claiming that AP's form infringes his trademark rights.[17] Protection under the statute generally requires a showing of both secondary meaning and a likelihood of confusion as to the source of the product. *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1221 (2d Cir.1987). This two-pronged in-

quiry permits the determination of whether a plaintiff has a protectible interest and whether that interest is being infringed. *Id.* at 1221. A defendant, in turn, can raise the defense of functionality, which eliminates protection under the statute.

A functional feature is one that " 'is essential to the use or purpose of the article or [that] affects the cost or quality of the article.' " *Warner Bros. v. Gay Toys, Inc.*, 724 F.2d 327, 331 (2d Cir.1983) (quoting *Inwood Laboratories v. Ives Laboratories*, 456 U.S. 844, 850–51 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982)). The purpose of precluding trademark protection for functional elements is to encourage competition by eliminating the monopolization of the essential elements of a product. *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 77 (2d Cir.1985). In the case at bar, plaintiff seeks protection for the overall form he has produced, not for its individual components. Granting plaintiff the protection it seeks would preclude any other supplier from publishing an authentic pitching form. Any successful pitching form necessarily requires the inclusion of, for example, the pitcher's records for the season and against the particular opponent. Moreover, as plaintiff himself recognizes, within

---

**15.** The legend included on plaintiff's form is also not copyrightable since it only lists what the categories stand for. Ruling otherwise would prevent the publishers of competing pitching forms from explaining what the statistics used in their forms stand for. *See Matthew Bender*, 672 F.Supp. at 111; 37 C.F.R. § 202.1(a) (1989).

We note AP's totally inconsistent arguments as to the copyrightability of these explanations. While in one respect AP agrees that such explanations are not copyrightable, Def. Memo. at 21, at the same time, in response to plaintiff's charge that AP actually puts a copyright notice on its own form, AP argues that its copyright notice is only to reserve its rights in, for example, its "written description in the lower margin of the form." Def. Reply Memo. at 3 n. 2.

**16.** Section 43(a) provides:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including works or other symbols tending falsely to describe

or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he or she is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a) (1988). An amendment of this section became effective on November 16, 1989.

**17.** This may actually be a trade dress case, as plaintiff is seeking protection for the overall image of its form, not necessarily for any of the phrases it has selected. *See LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985). Nonetheless, the legal significance of this distinction is limited. *Score, Inc. v. CAP Cities/ABC, Inc.*, 724 F.Supp. 194, 197 (S.D.N.Y. 1989).

these general categories, wins, losses, innings pitched, and earned run average are the traditional statistics sought by the newspapers and the public. Finally, as noted, the exact order these statistics can be practically presented in is also subject to obvious restraints. Any curtailing of the right to use these categories would exact a substantial limitation on competition. Therefore, we find that plaintiff's form is functional and provides plaintiff with no Lanham Act remedies.[18]

## III. CONCLUSION

We conclude that plaintiff's form is neither copyrightable under the Copyright Act nor protectible under the Lanham Act. Summary judgment in favor of AP is, therefore, granted as there are no genuine issues of material fact existing as to either of these causes of action. Accordingly, the claims brought by plaintiff against AP are dismissed.

SO ORDERED.

# APPENDIX 1

THE HARTFORD COURANT: Sunday, May 6, 1984

# ■ SCOREBOARD ■

## Today's Games

| Team | Probable Pitcher (H) | Time | Odds | 1984 | | vs.team at site | | | Last 3 starts | | | MBA |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | W/L | ERA | W/L | IP | ERA | W/L | IP | ERA | |
| **AMERICAN LEAGUE** | | | | | | | | | | | | |
| DET | Wilcox (R) | | Even–6 | 3–0 | 3.34 | 0–2 | 10 | 9.00 | 2–0 | 22 | 2.05 | 11.05 |
| CLEV | Blyleven (R) | 1:35 | * | 3–2 | 3.14 | 0–0 | 6 | 3.00 | 1–1 | 22 | 3.68 | 12.68 |
| K.C. | Gura (L) | | * | 4–0 | 2.55 | 0–2 | 9⅔ | 9.31 | 2–0 | 21⅓ | 1.69 | 9.28 |
| TORN | Alexander (R) | 1:35 | 5½–6½ | 1–1 | 3.82 | * | * | * | 1–1 | 21⅔ | 2.91 | 9.97 |
| CHIC | Bannister (L) | | Even–6 | 2–2 | 5.12 | 0–1 | 8 | 2.25 | 1–1 | 19⅔ | 5.03 | 15.10 |
| BOST | Hurst (L) | 2:05 | * | 3–3 | 2.02 | 1–1 | 13⅓ | 4.73 | 2–1 | 18 | 1.50 | 15.00 |
| OAK | Warren (R) | | Even–6 | 3–3 | 3.82 | * | * | * | 2–1 | 18 | 5.00 | 15.50 |
| MINN | Hodge (L) | 2:15 | * | 0–0 | 7.20 | * | * | * | 0–0 | 5 | 7.20 | 23.40 |
| N.Y. | Fontenot (L) | | * | 0–4 | 4.88 | 1–0 | 7 | 5.14 | 0–2 | 16⅓ | 2.76 | 13.22 |
| MIL | Cocanower (R) | 2:30 | 5½–6½ | 0–4 | 3.00 | * | * | * | 0–3 | 23⅔ | 1.90 | 12.55 |
| BALT | Boddicker (R) | | 6–7 | 1–3 | 3.19 | 1–0 | 6 | 4.50 | 1–1 | 23 | 1.57 | 10.17 |
| TEX | Darwin (R) | 3:05 | * | 3–0 | 2.40 | 1–0 | 6⅔ | 0.00 | 2–0 | 25 | 1.08 | 7.54 |
| CAL | John (L) | | 5½–6½ | 2–2 | 2.04 | * | * | * | 1–1 | 21⅓ | 2.11 | 11.39 |
| SEAT | Young (L) | 4:35 | * | 2–2 | 6.52 | 1–0 | 11⅔ | 0.77 | 0–1 | 11⅔ | 8.49 | 20.83 |
| **NATIONAL LEAGUE** | | | | | | | | | | | | |
| ATL | McMurtry (R) | | * | 2–3 | 3.58 | 1–0 | 7 | 3.86 | 1–1 | 20⅓ | 3.10 | 13.28 |
| MONT | Lea (R) | 1:05 | 6–7 | 4–1 | 2.61 | 0–1 | 7 | 6.43 | 2–0 | 20 | 2.70 | 13.05 |
| ATL | Camp (R) | | * | 2–0 | 2.31 | 0–1 | 4 | 4.50 | 2–0 | 11⅔ | 2.31 | 10.03 |
| MONT | Palmer (R) | | 6–7 | 2–0 | 2.29 | * | * | * | 1–0 | 14⅔ | 2.45 | 5.52 |
| L.A. | Pena (R) | | * | 4–1 | 1.41 | 0–0 | 7⅔ | 2.35 | 3–0 | 24⅔ | 1.11 | 7.40 |
| PITT | McWilliams (L) | 1:35 | Pick 'em | 0–3 | 3.24 | 0–0 | 8 | 2.25 | 0–2 | 17 | 3.18 | 12.18 |
| L.A. | Valenzuela (L) | | 5½–6½ | 3–2 | 2.93 | 0–0 | 7⅓ | 3.68 | 3–0 | 27 | 0.67 | 6.33 |
| PITT | Tudor (L) | | * | 1–1 | 2.91 | * | * | * | 0–1 | 19⅓ | 4.19 | 14.43 |
| CINN | Russell (R) | | * | 1–3 | 3.14 | * | * | * | 0–2 | 22 | 1.23 | 11.45 |
| PHIL | Carlton (L) | 1:35 | 7½–8½ | 1–1 | 2.50 | 1–0 | 8 | 4.50 | 0–1 | 21 | 2.14 | 11.57 |
| HOUS | Ryan (R) | | * | 1–2 | 3.65 | 2–0 | 15⅓ | 2.30 | 0–1 | 16 | 5.06 | 12.94 |
| METS | Gooden (R) | 1:35 | Pick 'em | 2–1 | 2.63 | * | * | * | 1–0 | 19 | 0.47 | 9.95 |
| S.F. | Laskey (R) | | * | 0–3 | 2.20 | * | * | * | 0–2 | 19⅔ | 2.29 | 10.98 |
| STL | Andujar (R) | 2:15 | 6½–7½ | 4–2 | 3.09 | 0–1 | 15⅔ | 2.87 | 2–1 | 25 | 3.24 | 10.08 |
| S.D. | Show (R) | | * | 4–1 | 1.89 | 2–0 | 14 | 1.93 | 2–1 | 17⅓ | 1.56 | 10.90 |
| CUBS | Ruthven (R) | 2:20 | Even–6 | 2–2 | 5.35 | * | * | * | 0–2 | 17⅓ | 7.79 | 12.98 |

Bottom team is home team. Favored team is designated by odds beside pitcher's name. All pitching data reflects the pitcher's past performance as a "starter." 1984—Pitcher's 1984 record as "starter." Vs Team at site—Pitcher's past performance vs. today's opponent at the site of today's game. Last 3 Starts—Reflects how pitcher is currently going. Details his performance over his last three starts. W/L—Won/lost record as a "starter". IP—Innings pitched. ERA—Earned run average. MBA—Men on base average. (Average number of men allowed to reach base via hits and walks per nine innings pitched.) The odds are estimated lines. Time is Eastern Daylight Time

18. Although the parties have not briefed this issue, we also doubt whether plaintiff could ever show that his form has acquired secondary meaning to the extent that the public associates the form's categories with plaintiff himself. *See 20th Century Wear, Inc. v. Sanmark–Stardust Inc.*, 815 F.2d 8, 10 (2d Cir.1987).

# APPENDIX 2

## FRIDAY'S PITCHERS
### American

| Away Home | Probable Pitcher | Time | Line | 1983 W–L | ERA | vs. opp. at site W–L | IP | ERA | last 3 starts W–L | IP | ERA | AHWG |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DET | Matt Wilcox (R) | | EV–6 | 11–10 | .397 | 0–0 | 90 | 0.00 | 0–0 | 00.0 | 0.00 | 0.0 |
| at CHI | Rich Dotson (R) | 1:30 | | 22–7 | 3.22 | 1–0 | 80 | 2.25 | 0–0 | 00.0 | 0.00 | 0.0 |
| NY | John Montefusco (R) | | 5.5–6.5 | 14–4 | 3.31 | 0–0 | 00 | 00 | 000 | 00.0 | 0.00 | 0.0 |
| at TEX | Frank Tanana (L) | 7:35 | | 7–9 | 3.05 | 0–1 | 71 | 6.14 | 0–0 | 00.0 | 0.00 | 0.0 |
| CLE | Bert Blyleven (R) | | | 7–10 | 3.91 | 0–0 | 00 | 00 | 00.0 | 0.00 | 0.00 | 0.0 |
| at KC | Mark Gubicza (R) | 7:35 | PK | 0–0 | 0–0 | 0.0 | 00 | 00.0 | 0.00 | 0.00 | 0.00 | 0.0 |
| BALT | Mike Boddiker (R) | | 5.5–6.5 | 16–8 | 2.77 | 1–0 | 70 | 0.0 | 0–0 | 00.0 | 0.00 | 0.0 |
| at MINN | Mike Smithson (R) | 7:35 | | 10–11 | 3.91 | 0–0 | 00 | 0–0 | 00.0 | 0.00 | 0.00 | 0.0 |
| TOR | Doyle Alexander (R) | | 5.5–6.5 | 7–8 | 4.41 | 1–0 | 111 | 1.59 | 0–0 | 00 | 0.00 | 0.0 |
| at CAL | Steve Brown (R) | 9:30 | | 3–4 | 4.50 | 1–1 | 32 | 7.36 | 0.0 | 00.0 | 0.00 | 0.0 |
| BOST | Dennis Boyd (R) | | | 4–8 | 3.34 | 0–0 | 00 | 0–0 | 00.0 | 00.0 | 0.00 | 0.0 |
| at OAK | Larry Sorensen (R) | 9:35 | EV–6 | 12–11 | 4.24 | 0–0 | 00 | 0–0 | 0.00 | 00.0 | 0.00 | 0.0 |
| MILW | Moose Haas (R) | | 7.5–8.5 | 13–3 | 3.27 | 0–0 | 70 | 129 | 0–0 | 00.0 | 0.00 | 0.0 |
| at SEA | Matt Young (L) | 9:35 | | 11–15 | 3.27 | 0–0 | 00 | 0–0 | 00.0 | 0.00 | 0.00 | 0.0 |

### National

| Away Home | Probable Pitcher | Time | Line | 1983 W–L | ERA | vs. opp. at site W–L | IP | ERA | last 3 starts W–L | IP | ERA | AHWG |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PHIL | Charles Hudson (R) | | EV–6 | 8–8 | 3.35 | 0–0 | 52 | 9.53 | 0–0 | 00.0 | 0.00 | 0.0 |
| at CINN | Joe Price (L) | 6:35 | | 10–6 | 3.38 | 1–0 | 81 | 1.08 | 0–0 | 0.00 | 00.0 | 0.0 |
| MONT | Bryn Smith (R) | | | 6–11 | .349 | 0–0 | 12 | 5.40 | 0–0 | 00.0 | 0.00 | 0.0 |
| at ATL | Ken Dayley (L) | 6:40 | 6–7 | 5–8 | 4.30 | 0–1 | 61 | 2.84 | 0–0 | 00.0 | 0.00 | 0.0 |
| NY | Walt Terrell (R) | | | 8–8 | 3.50 | 1–0 | 60 | 1.50 | 0–0 | 00.0 | 0.00 | 0.0 |
| at HOU | Tony Scott (R) | 7:35 | 7.5–8.5 | 10–6 | 3.72 | 1–1 | 161 | 2.20 | 0–0 | 00.0 | 0.00 | 0.0 |
| CHI | Scott Sanderson (R) | | 6.5–7.5 | 6–7 | .445 | 0–0 | 10 | 27.00 | 0–0 | 00.0 | 0.00 | 0.0 |
| at SD | Tim Lollar (L) | 9:05 | | 7–12 | 4.58 | 1–1 | 131 | 3.38 | 0–0 | 00.0 | 0.00 | 0.0 |
| PITT | John Tudor (L) | | 6.5–7.5 | 13–12 | 4.05 | 0–3 | 00 | 0–0 | 00.0 | 0.00 | 0.00 | 0.0 |
| at LA | Bob Welch (R) | 9:35 | | 15–12 | 2.65 | 0–0 | 70 | 2.57 | 0–0 | 00.0 | 0.00 | 0.0 |
| ST L | Joaquin Andujar (R) | | EV–6 | 7–16 | 4.00 | 0–1 | 80 | 5.63 | 0–0 | 00.0 | 0.00 | 0.0 |
| at SF | Bill Laskey (R) | 10:05 | | 13–10 | 4.19 | 1–0 | 90 | 1.00 | 0–0 | 00.0 | 0.00 | 0.0 |

Legend W–L Won–Lost IP Innings pitched ERA Earned run average AHWG Average hits and walks per nine innings

# APPENDIX 3

| | PITCHERS | LINE | 1987 W–L | ERA | TEAM REC | 1987 W–L | VS IP | OPP ERA | LAST 3 STARTS W–L | IP | ERA | AHWG |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Minnesota | Niekro (R) | 2:35p | 7–12 | 5.00 | 6–11 | 1–1 | 10.0 | 3.60 | 1–1 | 17.2 | 4.58 | 13.2 |
| Kansas City | Gubicza (R) | 6–7 | 12–18 | 4.10 | 14–20 | 0–1 | 6.0 | 7.50 | 1–2 | 23.0 | 2.35 | 12.1 |
| Seattle | Langston (L) | 3:05p | 18–13 | 3.86 | 20–14 | 2–0 | 18.0 | 1.00 | 1–2 | 21.0 | 3.00 | 15.4 |
| Texas | Hough (R) | 5½–6½ | 18–12 | 3.78 | 22–17 | 1–0 | 12.0 | 4.50 | 1–1 | 25.0 | 2.88 | 9.7 |
| Cleveland | Farrell (R) | 3:10p | 4–1 | 3.21 | 3–5 | No Record | | | 0–1 | 21.0 | 4.71 | 14.1 |
| California | Witt (R) | 6–7 | 16–13 | 3.85 | 18–17 | No Record | | | 1–1 | 23.0 | 3.91 | 11.3 |

KEY=
TEAM REC—Team's record in games started by today's pitcher.
AHWG—Average hits and walks allowed per 9 innings.
VS OPP—Pitcher's record versus this opponent, 1987 statistics.
Copyright 1987 Sports Features Syndicate, Inc. and Computer Sports World.
AP–NY–01–25–89 1635 EST <

# APPENDIX 4

## Today's games and pitching matchups

### AMERICAN LEAGUE

| Team | Probable Pitchers (H) | Time | Line | 1987 W–L | ERA | Team Rec. | Vs Opp W–L | IP | ERA | Last 3 Starts W–L | IP | ERA | MBA |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Toronto | Cerutti (L) | | Even–6 | 10–4 | 4.16 | 13–7 | 1–1 | 10⅔ | 10.13 | 1–1 | 17 | 4.76 | 13.8 |
| New York | Filson (L) | 7:30p | | 0–0 | 7.88 | 0–0 | 0–0 | 0⅓ | 0.00 | — | — | — | — |
| Seattle | Bankhead (R) | | | 9–8 | 5.12 | 12–11 | 2–1 | 19⅔ | 3.66 | 2–0 | 20 | 1.80 | 7.2 |
| Chicago | Long (R) | 8:00p | Even–6 | 8–8 | 4.17 | 11–10 | 1–2 | 15⅓ | 5.87 | 0–2 | 15⅓ | 8.22 | 16.4 |
| California | Witt (R) | | | 15–12 | 3.85 | 17–15 | 0–2 | 16 | 3.38 | 0–3 | 25⅔ | 3.86 | 12.3 |
| Kansas City | Leibrandt (L) | 8:35p | 6–7 | 15–10 | 3.04 | 18–13 | 2–0 | 15 | 2.40 | 2–1 | 21⅔ | 4.15 | 12.9 |

### NATIONAL LEAGUE

| Team | Probable Pitchers (H) | Time | Line | 1987 W–L | ERA | Team Rec. | Vs Opp W–L | IP | ERA | Last 3 Starts W–L | IP | ERA | MBA |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chicago | Moyer (L) | | | 11–13 | 4.98 | 12–17 | 2–1 | 27 | 3.33 | 1–2 | 19⅓ | 3.72 | 10.7 |
| Philadelphia | Carman (L) | 1:35p | 6–7 | 10–10 | 4.62 | 15–15 | 0–1 | 5 | 3.60 | 2–1 | 14⅔ | 5.52 | 16.0 |
| Atlanta | Z. Smith (L) | | | 15–8 | 3.97 | 21–12 | 1–0 | 9 | 1.00 | 1–1 | 19 | 3.79 | 12.3 |
| San Diego | Show (R) | 4:05p | 5½–6½ | 7–16 | 4.00 | 11–20 | 2–1 | 21⅓ | 4.22 | 1–1 | 21⅔ | 1.66 | 12.0 |
| Houston | Darwin (R) | | | 8–9 | 3.60 | 16–11 | 0–0 | 13⅓ | 7.43 | 0–2 | 11⅔ | 5.40 | 15.4 |
| San Francisco | Reuschel (R) | 4:05p | 7–8 | 12–7 | 2.75 | 4–1 | — | — | — | 3–0 | 25 | 1.44 | 5.4 |
| Cincinnati | Rasmussen (L) | | | 2–1 | 5.40 | 2–1 | — | — | — | 2–1 | 18⅓ | 5.40 | 10.3 |
| Los Angeles | Valenzuela (L) | 7:05p | 5½–6½ | 12–13 | 4.10 | 13–17 | 1–3 | 29 | 5.28 | 1–2 | 26⅓ | 3.76 | 12.3 |
| Cincinnati | Power (R) | | DH | 10–11 | 4.33 | 17–13 | 2–1 | 23 | 2.74 | 0–3 | 17 | 5.82 | 13.2 |
| Los Angeles | Welch (R) | | 5½–6½ | 11–9 | 3.46 | 18–13 | 2–0 | 13 | 4.15 | 0–1 | 21 | 5.57 | 11.6 |
| St. Louis | Mathews (L) | | Even–6 | 10–9 | 4.02 | 13–15 | 0–1 | 12 | 3.75 | 1–1 | 23 | 2.74 | 9.4 |
| Pittsburgh | Dunne (R) | 7:35p | | 12–5 | 2.86 | 11–8 | 1–0 | 9 | 1.00 | 3–0 | 23 | 2.74 | 11.3 |
| New York | Cone (R) | | Even–6 | 5–3 | 3.78 | 6–4 | 0–0 | 5 | 5.40 | 2–0 | 19⅔ | 1.83 | 9.6 |
| Montreal | Perez (R) | 7:35p | | 3–0 | 2.29 | 5–0 | — | — | — | 3–0 | 21⅓ | 2.53 | 10.5 |

Bottom team is home team. Favored team is designated by odds beside pitcher's name. All pitching data reflects the pitcher's past performance as a "starter." **1987**—Pitcher's 1987 record as "starter." **Team Rec**—Team's record in games started by today's pitcher. **Vs OPP**—Pitcher's performance this year vs. today's opponent. **Last 3 Starts**—Pitcher's performance over last three starts. **W/L**—Won/lost record as a "starter". **IP**—Innings pitched. **ERA**—Earned run average. **MBA**—Average number of men allowed to reach base via hits and walks per nine innings pitched. The odds are estimated ones.